IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

THOMAS C. GRANT,

                **Plaintiff,**

    **v.**                                      **1:05-cv-3180-WSD**

RTG FURNITURE CORP. OF
GEORGIA,

                **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Defendant RTG Furniture Corp. of Georgia's ("RTG" or "Defendant") Motion for Summary Judgment ("Def. MSJ") [21] on Plaintiff Thomas C. Grant's ("Plaintiff") claims.

## I.    FACTUAL BACKGROUND

On September 9, 1996, Defendant hired Plaintiff as an upholstery technician at Defendant's distribution center in Suwanee, Georgia. Plaintiff's duties included repairing furniture that had either been damaged in the warehouse before being sold or returned by a customer, and he would occasionally need to lift furniture or parts for positioning at a work station. (Def. Statement of Material Facts ("SMF"), attached to Def. MSJ at ¶¶ 2-3.) During his first year of employment, Plaintiff was

promoted to the position of Shop Line Supervisor after receiving an "above average" review.  (Id. at ¶ 4.)  In his first year as a supervisor, Plaintiff received an "above average" review, and the next year Plaintiff was evaluated as an "outstanding employee" in the Shop Department.  (Id. at ¶ 5.)  In May 2001, Plaintiff chose to step down from his supervisor position, and he went back to being an hourly employee.  (Id. at ¶ 6.)

On October 10, 2001, Plaintiff had an accident while assisting another employee to lift a sleeper sofa, and he suffered injuries to his neck, elbow, and back.  (Id. at ¶ 7.)  Shortly thereafter, Plaintiff was diagnosed with a cervical strain and left elbow epicondylitis.  (Id. at ¶ 8.)  In November 2001, Plaintiff was instructed by his physicians to limit any lifting with his right arm.  On March 8, 2002, Plaintiff's doctor placed him on a 50 pound lifting restriction.  (Id. at ¶¶ 9-10.)  On April 18, 2002, Plaintiff's physicians placed him on leave due to pain from his injuries.  He was on leave until April 22, 2002.  On July 1, 2002, Plaintiff's lifting restriction was reduced to 40 pounds.  Despite his injury and his lifting restrictions, Plaintiff continued to receive satisfactory performance reviews.

On May 9, 2003, Defendant granted Plaintiff's request to take a one-month leave under the Family and Medical Leave Act ("FMLA") for treatment for alcohol

addiction.  (Id. at ¶ 14.)  Plaintiff returned to work on June 9, 2003.  Around the same time, Plaintiff's physicians placed him on a lifting restriction of 30 pounds and limited his ability to bend and perform overhead work.  (Id. at ¶ 15.) Plaintiff's supervisors instructed his co-workers to assist Plaintiff with lifting and other manual tasks that he could not perform without assistance.  (Id. at  ¶ 16.)

Plaintiff complains that his co-workers at times refused to assist him in lifting furniture.  Plaintiff, however, did not report his co-workers's refusals to Human Resources or anyone else working for Defendant.  (Id. at 18.)  Plaintiff also did not file an internal grievance, though he was aware of the existence of a process for doing so.  Plaintiff continued to repair furniture for Defendant after his injury and admitted that to avoid lifting heavy pieces, he could ask for assistance, ask not to receive a particular piece, or safely turn or flip a piece so that he could make the necessary repairs.  (Id. at ¶ 18-19.)

In June 2003, Plaintiff's physician determined that Plaintiff could continue to work on light duty, provided he lifted no more than 20 pounds and did not perform overhead work.  (Id. at  ¶ 20.)  Defendant determined that it could not accommodate these restrictions, and Defendant's insurance carrier placed Plaintiff on leave from June 23, 2003 to December 4, 2003.  Plaintiff had surgery in

-3-

September 2003, and afterwards Plaintiff's physicians gave him permission to return to work on a restricted basis. (<u>Id.</u> at ¶¶ 22-23.) After attempting to return, Plaintiff told Defendant he could not perform his duties, and he went back on workers' compensation leave. (<u>Id.</u> at ¶ 24.)

On April 16, 2004, Plaintiff returned to work on "medium duty" with a lifting restriction of 30 pounds. (<u>Id.</u> at ¶ 28.) Defendant asked Plaintiff to sign a document acknowledging his restrictions to ensure full accommodation of Plaintiff's limitations. (<u>Id.</u>) After he returned to work, Plaintiff was never required to lift anything in excess of his restrictions, and he consistently worked 40 hours per week during the summer of 2004. (<u>Id.</u> at ¶ 30.) Although Plaintiff is restricted from lifting, he is capable of dressing and otherwise taking care of himself. (<u>Id.</u>)

On August 31, 2004, Plaintiff was terminated for taking, without permission, some abandoned back panels from Defendant's premises and then allegedly lying about it when he was questioned. (<u>Id.</u> at ¶ 50.) Plaintiff denies taking anything without permission and claims that Defendant's Shop Manager, Mr. Kopic, concocted the story to mislead upper management regarding Plaintiff's permission to remove the back panels and to get rid of Plaintiff. (Pl. Opp. to MSJ, at 14.) Plaintiff filed his Complaint on December 16, 2005, alleging a violation of the

Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111(8), and retaliation. (Compl. [1].)  Plaintiff claims that Defendant terminated him because he worked slower than other technicians due to his lifting restriction, and the accusation of stealing was pretextual.  On August 8, 2006, Defendant filed its Motion for Summary Judgment.  (MSJ [21].)

## II.    DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact.  Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999).  Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial.  Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999).  The non-moving party "need not

present evidence in a form necessary for admission at trial; however, he may not

merely rest on his pleadings." Id.

The Court must view all evidence in the light most favorable to the party

opposing the motion and must resolve all reasonable doubts in the non-movant's

favor. United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am., 894 F.2d 1555,

1558 (11th Cir. 1990). "[C]redibility determinations, the weighing of evidence,

and the drawing of inferences from the facts are the function of the jury . . . ."

Graham, 193 F.3d at 1282. "If the record presents factual issues, the court must

not decide them; it must deny the motion and proceed to trial." Herzog, 193 F.3d

at 1246. But, "[w]here the record taken as a whole could not lead a rational trier of

fact to find for the non-moving party," summary judgment for the moving party is

proper. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587

(1986).

B.     Plaintiff's ADA Claim

"The ADA prohibits discrimination by covered entities, including private

employers, against qualified individuals with a disability. Specifically, it provides

that no covered employer 'shall discriminate against a qualified individual with a

disability because of the disability of such individual in regard to job application

procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'" Sutton v. United Air Lines, Inc., 527 U.S. 471, 478 (1999) (citing 42 U.S.C. § 12112(a)).  Defendant argues that Plaintiff cannot establish a prima facie case of disability discrimination under the ADA because he is not disabled for purposes of the statute, Defendant accommodated all of Plaintiff's restrictions, and Plaintiff was not fired because of his disability, but because he stole from the company.  (Def. MSJ, at 3.)

To establish a prima facie case of discriminatory discharge under the ADA, Plaintiff must establish (1) he has a disability; (2) he is a qualified individual (i.e., one who is able to perform, with or without reasonable accommodation, the essential functions of the position from which he was discharged); and (3) Defendant discharged him because of his disability.  See Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1193 (11th Cir. 2004); Bray v. Nat'l Servs. Indus., Inc., 209 F. Supp. 2d 1343, 1350 (M.D. Ga. 2001).

1.    *Plaintiff's Alleged Disability*

An individual is considered to have a disability for the purposes of the ADA if he (1) has a physical or mental impairment that substantially limits a major life activity; (2) has a record of such an impairment; or (3) is regarded as having such an impairment.  42 U.S.C. § 12102(2); see also Standard v. ABEL Servs., Inc., 161 F.3d 1318, 1327 (11th Cir. 1998); Bray v. Nat'l Servs. Indus., Inc., 209 F. Supp. 2d 1343, 1350 (M.D.Ga. 2001).  Plaintiff asserts he is disabled under all three definitions of the statute.

Under the first definition, an individual is considered to have a disability if he has a physical or mental impairment that substantially limits a major life activity.  42 U.S.C. § 12102(2).  Major life activities are defined as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  29 C.F.R. § 1630.2(I).  According to the EEOC's interpretive regulations, "substantially limited" means "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform the same major life activity."  29 C.F.R. § 1630.2(j)(1)(ii).  The Supreme Court has instructed that "substantially limits" is a severe standard, and that determining

whether an impairment substantially limits a major life activity is a highly individualized inquiry.  Toyota Motor Mfg., Ky. Inc. v. Williams, 534 U.S. 184, 198 (2002) ("That the Act defines 'disability' with respect to an individual . . . makes clear that Congress intended the existence of a disability to be determined in . . . a case-by-case manner.") (citations and quotations omitted); Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 567 (1999) ("[T]he Act requires [persons] . . . claiming the Act's protection . . . to prove a disability by offering evidence that the extent of the limitation in terms of their own experience . . . is substantial.").

Plaintiff appears to argue that the life activities substantially limited by his disability are the activities of performing manual tasks and working, although he devotes little time to discussing either.[1]  (See Pl. Resp. to MSJ [27], at 9-12.)

---

[1] The Court notes that the task of "lifting" is not among the EEOC's enumerated list of major life activities.  The Eleventh Circuit has looked unfavorably on plaintiffs' arguments that a lifting restriction imposed by a doctor constitutes a disability.  See Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1227 (11th Cir. 1999) (affirming trial court's decision that a ten-pound lifting restriction does not establish that Plaintiff has a disability under the ADA and holding that plaintiff's restriction on lifting alone did not make plaintiff substantially limited in performing manual tasks ); see also Chanda v. Engelhard/ICC, 234 F.3d 1219, 1222 (11th Cir. 2000) (reiterating the holding in Hilburn that a diminished activity tolerance for normal daily activities such as lifting, running and performing manual tasks, as well as a lifting restriction, did not constitute a disability under the ADA).

"With respect to the major life activity of working, . . . the term 'substantially limits' means 'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.  The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.'"  Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1227 (11th Cir. 1999).

Plaintiff has not submitted evidence that his lifting restriction significantly restricted his ability to work either a class of jobs or a broad range of jobs in various classes.  In fact, Plaintiff continued to repair furniture after his injuries and admitted that, to avoid heavy pieces, he could ask for assistance, ask not to receive a particular piece, or safely turn or flip a piece so he could repair it.  (Def. SMF, at ¶ 19.)  Plaintiff also admitted that his physicians told him that he was able to perform "medium duty work," meaning that he was capable of performing the work of a furniture technician provided that he had some help moving and lifting. (Grant Aff., attached to Pl. Resp. to MSJ, at ¶ 9.)  Plaintiff does not contend that he could not perform the tasks necessary in repairing furniture, he simply states that he was slower at his job and that, due to his lifting restriction, he completed less

furniture repairs than the average furniture technician.  (<u>Id.</u> at ¶ 10.)  The evidence is that Plaintiff did not ask anyone for help in performing his job, even though he was told that other employees would help him if needed.  (<u>Id.</u>)  Plaintiff testified that "with assistance, [he] could have completed at least 10 pieces per day" and that he had no problem repairing furniture, the only difficulty was transporting the furniture from the warehouse to Plaintiff's work bench.  (<u>Id.</u>)

Perhaps most importantly, Plaintiff admitted that he does not have a problem performing the tasks involved in actual furniture repair–he simply cannot carry heavy items on his own.  Plaintiff also worked for Defendant in a supervisory capacity before he decided to step down from the role.  This supervisory experience gives Plaintiff the ability to work in various supervisory or other capacities in the furniture repair industry that do not require heavy lifting.  Plaintiff's evidence, therefore, is insufficient to show that he is significantly restricted in his ability to work either a class of jobs or a broad range of jobs in various classes.

Plaintiff also appears to argue that he is substantially limited in performing manual tasks.  (Pl. Resp. to MSJ, at 10.)  "[T]o be substantially limited in performing manual tasks, an individual must have an impairment that prevents or

severely restricts the individual from doing activities that are of central importance to most people's daily lives.  The impairment's impact also must be permanent or long term."  <u>Williams</u>, 534 U.S. at 198.  An individual most show that "he is substantially limited in a range of manual tasks rather than a narrow category thereof."  <u>Chanda</u>, 234 F.3d at 1223.

As previously noted, Plaintiff has admitted that he was able to perform the actual work of repairing furniture; the only activity he was unable to perform unassisted was lifting heavy objects to bring them to his work bench.[2]  Plaintiff's own testimony that he continued to repair furniture, in addition to dressing and

---

[2]  Plaintiff cites as evidence of his "disability" a list of 11 limitations he currently experiences that he claims are sufficiently limiting.  (Pl. Resp. to MSJ, at 11.)  In determining whether a plaintiff is "disabled" under the ADA, however, the Court evaluates the alleged disability as it existed at the time of the alleged adverse employment action.  <u>See Cash v. Smith</u>, 231 F.3d 1301, 1306 n.5 (11th Cir. 2000) (holding that subsequent change in plaintiff's medical condition was "irrelevant" to her ADA claim because courts "evaluate her disability as manifested at [the time of the alleged adverse employment action]").  Plaintiff's Affidavit, however, lists his current limitations, many of which cannot be separated from the Grave's disease Plaintiff developed after his termination.  Plaintiff's Affidavit states that "[t]oday [he] is fully disabled according to the Social Security Administration" and that the basis of his disability is "neck and back injuries together with complications arising from Grave's Disease . . . suffered following [his] termination by RTG." (Grant Aff., at ¶ 17.)  It is unclear which limitations Plaintiff experienced during his employment with Defendant and which symptoms arose later.  What is clear, however, is that Plaintiff has testified that he was able to complete the tasks of furniture repair without a problem while he was employed by Defendant.

otherwise taking care of himself, shows that he was not substantially limited in performing manual tasks.[3]

### 2.    "Regarded As" Disabled

Plaintiff next argues he is disabled for purposes of the ADA because he was "regarded as" disabled by Defendant.  As evidence for this claim, Plaintiff asserts that "Defendant continued to work with Plaintiff's doctor to attempt to identify the job duties Plaintiff could perform" and that Defendant was "cognizant of Plaintiff's various limitations on lifting, bending and twisting."  (Pl. Opp. to MSJ, at 12.) "Under the 'regarded as' prong, a person is 'disabled' if her employer perceives her as having an ADA-qualifying disability, even if there is no factual basis for that perception."  Carruthers v. BSA Adver., Inc., 357 F.3d 1213, 1216 (11th Cir. 2004); see also Williams v. Motorola, Inc., 303 F.3d 1284, 1290 (11th Cir. 2002) (holding "a plaintiff may maintain a claim under the ADA of being perceived as disabled without proof of actually being disabled").  This includes a person who "has a physical or mental impairment that does not substantially limit major life

_____

[3]  To the extent that Plaintiff argues that he is disabled under the statute because he has a record of an impairment that substantially limits a major life activity, this argument fails because the Court finds that Plaintiff has no such impairment.  See 42 U.S.C. § 12102(2).

activities but is treated by his employer as constituting such a limitation," as well as a person who "has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment."  29 C.F.R. § 1630.2(1).

To prove Defendant regarded him as substantially limited in the major life activity of working, Plaintiff must show Defendant perceived him as "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities."  29 C.F.R. § 1630.2(j)(3)(I); see also Sutton v. United Air Lines, Inc., 527 U.S. 471, 491 (1999) ("When the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs.").  Mere knowledge of the employee's physical or mental impairment and the restrictions imposed by the impairment is not sufficient to show the employer regarded the employee as disabled.  See Carruthers, 357 F.3d at 1217.

Plaintiff relies on the following evidence in support of his "regarded as" theory:  (1) Defendant continued to work with Plaintiff's doctor to attempt to identify the job duties Plaintiff could perform; (2) Defendant paid for Functional

-14-

Evaluation tests to determine the job duties Plaintiff could perform; (3) Defendant

was cognizant of Plaintiff's various limitations on lifting, bending and twisting.

(Pl. Resp. to MSJ, at 12.)  The Court finds this evidence, alone or taken as a whole,

is insufficient to show Defendant perceived Plaintiff as significantly restricted in

the ability to perform either a class of jobs or a broad range of jobs in various

classes as compared to the average person having comparable training, skills and

abilities.  At most, this evidence shows Defendant was aware of Plaintiff's lifting

restrictions, that Defendant actively attempted to find the job that was best-suited

to Plaintiff's restrictions, and that Defendant allowed Plaintiff to take time off as

needed when he was unable to work due to pain caused by his injuries.  Because

Plaintiff has failed to present sufficient evidence from which a reasonable juror

could conclude that he had a disability or was regarded as disabled by Defendant at

the time of his discharge, he cannot establish a prima facie case of discrimination

under the ADA.  Summary judgment is therefore appropriate on Plaintiff's ADA

claim.[4]

_____

[4] Even if Plaintiff could establish that he has a disability under the ADA, his
ADA claim also fails because he cannot show the third element of a prima facie
case of discrimination–that he was discharged because of his disability.  As
discussed in regard to Plaintiff's retaliation claim, all evidence supports the
determination that Plaintiff was fired because he stole from Defendant–not because

C.     Plaintiff's Retaliation Claim

                1.     *Prima Facie Case of Retaliation*

The ADA provides that "[n]o person shall discriminate against any

individual because such individual has opposed any act or practice made unlawful

by [the ADA] or because such individual made a charge ... under [the ADA]."  42

U.S.C. § 12203(a).  The Eleventh Circuit has adopted the Title VII retaliation

framework for analyzing ADA retaliation claims.  Stewart v. Happy Herman's, 117

F.3d 1278, 1287 (11th Cir. 1997).  To establish a prima facie case of retaliation, a

plaintiff must show: (1) he engaged in statutorily protected activity; (2) he suffered

an adverse employment action; and (3) a causal link between the protected

expression and the adverse action.  Id. (citing Goldsmith v. City of Atmore, 996

F.2d 1155, 1163 (11th Cir.1993)).  "Once a prima facie case is established, the

burden then shifts to the defendant employer to come forward with legitimate

non-discriminatory reasons for its actions that negate the inference of retaliation."

Id. (citing Goldsmith, 996 F.2d at 1163).  If the defendant succeeds in doing so, the

plaintiff must then put forth evidence that the employer's proffered

non-discriminatory reasons are pretextual.  Id.

────────────────

he was disabled.

-16-

Defendant argues that Plaintiff's retaliation claim fails because he cannot show the third element for a prima facie case–that he was terminated for making requests for accommodations for his disability.  Defendant argues that it accommodated all of Plaintiff's lifting restrictions for over two years prior to his termination for theft, and therefore Plaintiff cannot establish the temporal link required to prove the causal element of his retaliation claim.  (Def. MSJ, at 14.)

To establish a causal connection, Plaintiff must show that Defendant knew of the protected activity and "that there was a close temporal proximity between this awareness and the adverse . . . action." Higdon v. Jackson, 393 F.3d 1211, 1220-21 (11th Cir. 2004) (noting that the Eleventh Circuit has found time periods up to one month sufficient to constitute temporal proximity, while the Supreme Court has approved lower courts' determinations that three and four month periods are insufficient to show a causal connection).

Plaintiff argues, without providing any evidence, that when Mr. Kopic, the Shop Manager, received the results of Plaintiff's Functional Capacity Evaluation, he knew that Plaintiff would never be able to meet the daily average for production, and two months later he created a pretext for terminating him by falsifying an accusation that Plaintiff stole from Defendant.  That is, Plaintiff

argues that Defendant was aware of Plaintiff's protected activity (requesting accommodation for his restrictions) only after receiving the results of the evaluation and that the two month span between the notice and Plaintiff's termination is a sufficiently close temporal proximity to establish the required causal connection.  (Pl. Resp. to MSJ, at 13-14.)  This argument is unconvincing.

Although it is questionable whether even a two-month time period between the protected activity and Plaintiff's termination is sufficient to create a causal connection, Plaintiff inaccurately calculates the time which elapsed between Plaintiff's alleged protected activity and his termination.  Plaintiff was placed on his first lifting restriction in March 2002 and remained on some form of restriction until he was terminated in August 2004.  Throughout this time span, Plaintiff requested accommodations from Defendant for his lifting restrictions, and Defendant granted those requests.  Defendant did not first become aware of the protected activity when it received the results of the Functional Capacity Evaluation–Defendant was aware of Plaintiff's lifting restrictions and need for accommodations for more than two years.  Given the more than two years of time that elapsed between Plaintiff's first lifting restriction and his termination, the Court finds that Plaintiff has not produced evidence showing a close temporal

proximity between Plaintiff's protected activity, i.e. requesting accommodation for his restrictions, and his termination.  Because Plaintiff cannot show sufficient evidence for the third element of a prima facie case of retaliation, his retaliation claim fails.

2.   *Legitimate Non-discriminatory Reason for Termination*

Even if Plaintiff could establish a prima facie case of retaliation, his claim fails because he has not put forth evidence showing that Defendant's proffered legitimate non-discriminatory reason for termination was pretextual.  Once a plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to rebut the inference of discrimination by articulating a legitimate, non-retaliatory reason for its action.  Stewart, 117 F.3d at 1287.  Defendant's burden at this stage is "exceedingly light."  Turnes v. AmSouth Bank, N.A., 36 F.3d 1057, 1060-61 (11th Cir. 1994).  Defendant has met this burden by offering evidence that Plaintiff was terminated for taking property from Defendant without permission and lying about it.  The burden then shifted back to Plaintiff to "present concrete evidence in the form of specific facts which show that the defendant's proffered reason is mere pretext.  Mere conclusory allegations and assertions will not suffice."  Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990).

-19-

Plaintiff's evidence fails to cast sufficient doubt on Defendant's proffered reason for Plaintiff's termination to permit a reasonable factfinder to conclude the employer meant to retaliate against Plaintiff for requesting accommodations for his lifting restriction.

To show pretext, the plaintiff must "demonstrate that the proffered reason was not the true reason for the employment decision . . . . [The plaintiff] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Beard v. 84 Lumber Co., 2006 WL 2946883, at * 4 (11th Cir. Oct. 17, 2006). "[T]he district court must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." Jackson v. Ala. State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005) (quoting Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir.1997)). A subjective reason for the employer's action can be as legitimate as any other reason, and an employee cannot substitute her business judgment for that her employer. Chapman v. AI Transport, 229 F.3d 1012,

1030, 1033 (11th Cir. 2000) (en banc).  "Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext."  Isenbergh v. Knight-Ridder Newspaper Sales, Inc., 97 F.3d 436, 444 (11th Cir. 1996).

Plaintiff has not put forth sufficient evidence to show that Defendant's articulated reasons for Plaintiff's termination were a pretext for discrimination or unworthy of belief.  Plaintiff claims in his affidavit that Valerie Kvaraitis, Defendant's Parts Supervisor, gave him permission to take a different set of panels from the ones he was instructed not to take and that Defendant's accusations are false.  All other evidence in the record, however, supports a different conclusion. Mr. Kopic testified that Plaintiff took panels that he specifically instructed him not to take and that when Plaintiff was confronted about taking the panels, he asked Ms. Kvaraitis to write him a note after the fact, which she refused to do.  (Kopic Aff., at ¶¶ 9-16.)  Ms. Kvaraitis also testified that she never gave Plaintiff permission to take any panels and that on the Monday he was questioned, Plaintiff went to her office and asked her for a note giving him permission to take the panels.  (Kvaraitis Aff., at ¶¶ 5-9.)  Thomas Maldonado, Vice President of Quality Assurance for Defendant, also testified that Mr. Kopic informed him of the events surrounding Plaintiff's taking of the panels, and after Defendant reviewed a tape of

-21-

Plaintiff removing the panels, Maldonado decided that Plaintiff had engaged in gross misconduct for taking property against specific instructions, lying to management about having permission to remove the property, and asking Ms. Kvaraitis to deceive Defendant on Plaintiff's behalf.  (Maldonado Aff., at ¶¶ 3-6.)

In addition to affidavit testimony, Kvaraitis, Kopic, Darien Powell, and Wayne Griffin, a Shop Lead Supervisor, all prepared statements at the time the events occurred that corroborate and support Defendant's reason for termination. Plaintiff offers no evidence, other than his own speculative and self-serving testimony, that Defendant's reason for firing him is pretextual or that Defendant concocted the story in order to justify firing Plaintiff because he was not as productive as other employees.  To the contrary, the evidence shows that despite Plaintiff's lifting restrictions, Defendant continued to consider Plaintiff a valuable employee and consistently accommodated his restrictions.  The evidence overwhelmingly demonstrates that Plaintiff was fired due to a good faith belief by Defendant that Plaintiff engaged in gross misconduct.  The Court finds that Plaintiff has not demonstrated any weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in Defendant's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.

Defendant's motion for summary judgment on Plaintiff's retaliation claim must therefore be granted.

**IV.    CONCLUSION**

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [21] is **GRANTED**.

**SO ORDERED** this 7th day of November, 2006.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE